# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  1:16 CR 105** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **JONIDA ALICKA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is Defendant Jonida Alicka's Motion to Revoke Detention Order.  (**Doc #: 18** ("Motion").)  The Motion is **DENIED** for the following reasons.

## I.

On March 15, 2016, Jonida Alicka was arrested by federal agents pursuant to a criminal complaint.  (Doc #: 1.)  The complaint alleged that Ms. Alicka was part of a conspiracy to possess with the intent to distribute MDMA and marijuana, both Schedule I controlled substances, in violation of 21 U.S.C. §§ 841 and 846.  (Id.)  The complaint and subsequent indictment were the result of an FBI investigation headed by Special Agent David Gardner that began on September 1, 2015, and targeted Jonida Alicka ("Jonida"), her sister Denisa, and Ronald Turhani.

On March 18, 2016, Magistrate Judge Nancy Vecchiarelli conducted a contested detention hearing and concluded that there were no conditions or combination of conditions that

would assure Jonida Alicka's appearance at trial or the safety of the community, and remanded her to the custody of the Attorney General.

On April 5, 2016, a federal grand jury returned an indictment against Jonida and Denisa Alicka, Rinald Turhani, and Leka Konini, charging them with conspiracy to possess with the intent to distribute greater than 20 lbs of marijuana and at least 9 kilograms of MDMA, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D).

Defendant Jonida Alicka now asks the Court to review the Magistrate Judge's decision and reverse the order of detention.  The Court has reviewed the Motion, the Opposition Brief, the record and the case law and expresses its opinion below.

## II.

Under the Bail Reform Act, 18 U.S.C. § 3142, a judicial officer shall order the detention of a criminal defendant pending trial if he finds that no condition or combination of conditions will reasonably assure the defendant's appearance as required or the safety of the community. 18 U.S.C. § 3142(e).  Factors to be considered are the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant including family and community ties, residence in the community, employment and criminal history, and the nature of any danger to persons in the community which would be posed by the defendant's release.  18 U.S.C. § 3142(g).

There is a presumption, albeit rebuttable, in favor of pretrial detention if the judicial officer determines there is probable cause to believe that the person committed an offense for which a potential maximum term of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801.  18 U.S.C. § 3142(e).  As Jonida Alicka faces a mandatory-minimum

-2-

prison term of ten years for violating 21 U.S.C. § 801, it is undisputed that the presumption in favor of detention applies.  (Doc #: 18 at 6-7.)

The presumption shifts the burden of production to the defendant to show that her release would not pose a flight risk or a danger to any person or the community.  18 U.S.C. § 3143(a).  The government must then demonstrate flight risk by a preponderance of the evidence and danger to the community by clear and convincing evidence.  *United States v. Hinton*, 113 Fed. App'x 76, 77 (6th Cir. 2004) (unpublished).  The presumption does not disappear because the defendant comes forward with evidence to rebut it.  Rather, "the rebutted presumption retains evidentiary weight."  *U.S. v. Gunter*, No. 2:09-cr-90, 2009 WL 1867638, at *1 (S.D. Ohio Jun. 24, 2009) (quoting *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991)).

> The Court may continue to give the presumption some weight by keeping in mind that Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society."  *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).  Thus, the Court should consider legislative findings among the other factors to be weighed in deciding whether a defendant should be detained."  *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

*Gunter*, 2009 WL 1867638, at *1.

### III.

#### A.    The Detention Hearing

At the detention hearing involving Jonida and Denisa Alicka, SA Gardner testified about his investigation of the alleged conspiracy, and about Jonida's participation in that conspiracy.  He determined that Jonida was aiding and abetting the distribution of both MDMA and marijuana, and that she was involved in the sale of marijuana and the transportation of MDMA for sale.  The evidence against Jonida and her co-defendants consisted of surveillance, controlled purchases of narcotics by numerous cooperating sources, the cooperation of the FBI Los Angeles

-3-

and a local LA Police Department, and 80 hours of audio/video recordings.  SA Gardner testified to the following findings of his investigation.

Jonida was an auxiliary police officer with the Lindane Police Department, who used her position as an auxiliary officer to facilitate her drug-trafficking activities.  She accessed the LEADS database to see if her former boyfriend, F.M., a felon with a federal drug-trafficking conviction out on supervised release, had any outstanding arrest warrants.  On at least one occasion, March 4, 2015, she left the Lindane Police Department to conduct a controlled sale of marijuana, then returned to the Police Department.

In early December 2015, a confidential source received a Wickr message from Denisa offering to sell one-half kilogram of MDMA for $16,000.  She, Turhani and Konini flew from Cleveland to Las Vegas, then rented a car and drove to Los Angeles to make the sale. SA Gardner asked FBI agents in Los Angeles to conduct surveillance of those three.  They observed Konini at a gas station walking back to the rental car carrying a duffle bag.  The car was observed going into a second gas station with Konini walking away from the car with the duffle bag.  The LA agents were asked to contact the local police department to conduct a stop of the rental car.  A narcotics dog alerted to the presence of narcotics in the duffle bag, 9 kilograms of MDMA were found, and all three persons were arrested.  Subsequent to their arrest, there were several recorded calls between Denisa Alicka, Rinald Turhani, and Jonida Alicka.  During one call,  Turhani talked to Jonida about obtaining a lawyer for Denisa, repeating that only one of the three people in the car should take the hit for all of them.

There is evidence that Jonida spoke with a cooperating source shortly thereafter, stating that her sister had been arrested in California, and that she had 3-1/2 lbs of marijuana she needed

-4-

to sell (perhaps for money to travel to California to help her sister).  That source obtained the marijuana to sell for Jonida.

Shortly after the arrests, FBI Cleveland asked the District Attorney to dismiss its charges so that Cleveland FBI could continue its investigation.  The charges were dropped..

Despite these arrests and Jonida's law enforcement background, she and the others continued trafficking drugs with abandon.  In February 2016, investigators located another cooperating source who stated that he had a history of purchasing marijuana from Jonida Alicka, and that he had recently sold her 10 pounds of marijuana.  The cooperating source conducted multiple meetings with Jonida thereafter.

A cooperating source was once riding in the back of Jonida's car and smelled marijuana.  When he asked her about it, she explained that she had a pound of marijuana in the trunk, and that she wasn't worried about it because if she ever got pulled over, she would just brandish her badge and ask for a courtesy.  The source also explained that this was not the only occasion on which she made this statement.

Cooperating sources learned through Wickr discussions with Denisa Alicka that Jonida had recently transported two kilograms of MDMA to Ohio.  Denisa Alicka described in detail to a cooperating source how Jonida transported MDMA from New York to Ohio.  She said that Jonida would meet a truck driver at the New York border who would put the MDMA in her car, and Jonida would never touch it.  She would have a trail car follow her, and she was paid for transporting the MDMA.

There is a video/audio recording of a controlled buy of MDMA from Denisa Alicka during which Jonida entered the room in the middle of the transaction.  While the MDMA is

-5-

being measured, the source asked about purchasing larger quantities of MDMA and how it would work, during which Jonida answered some questions.

There was evidence that Jonida lived in a comfortable home while being a full-time student studying criminology at Cleveland State with no legitimate means of support.  She shared that home with a boyfriend who had a criminal history for violating federal drug-trafficking laws.

There was also evidence that Jonida had fronted to a cooperating source 5 pounds of marijuana on three separate occasions, all of which he kept in a safe in his basement.  After someone broke into his home and stole the safe, he called Jonida who recommended that he needed to start trafficking drugs in order to be able to pay his debt.  He began making $1000 payments to Jonida.  When he went to her residence to make the seventh payment, he got into a scuffle with Turhani, in Jonida's presence, when Turhani struck him in the face so hard that his tooth broke through his skin.  Thereafter, Jonida became the go-between for Turhani and the source, using the prospect of Turhani's violence as a means to encourage repayment of the debt.

Following the presentation of evidence at the detention hearing,[1] counsel for Jonida made the following arguments.  One, Jonida has no criminal record.  Two, the case against her with respect to trafficking MDMA is "weak" since there is no direct evidence of her involvement in the alleged conspiracy's MDMA trafficking.  Three, the only direct evidence of drug-trafficking relates to Jonida's marijuana business which carries a maximum prison term of 5 years, may be probationable, and imposes no presumption in favor of detention.  Four, the evidence regarding Jonida's former boyfriend, F.M., only showed that she was close to the action.  And the fact that

---

[1]Jonida's counsel presented no evidence.

-6-

she was an auxiliary cop should have little effect on the detention determination since counsel had seen other police officers with far worse crimes "walk[] in and out of this courtroom on bond."  (Hr'g Tr. 90.)

Magistrate Judge Vecchiarelli found, first and foremost, that probable cause supported the offense with which Jonida was charged.  She considered the offense a particularly serious drug-trafficking offense since it carried a ten-year mandatory minimum prison sentence and, contrary to defense counsel's perception, she believed the evidence was strong with respect to Jonida's role in MDMA-trafficking.  Although acknowledging that a defendant's prior criminal history is a significant factor in the detention decision, she was disturbed by the fact that, after Jonida's co-defendants were arrested in California, Jonida continued her drug-trafficking activity unabated.  Magistrate Judge Vecchiarelli was particularly concerned that, while Jonida knew her then-boyfriend was on supervised release for a federal drug-trafficking violation in the Northern District of Ohio, she and her sister transported him to the Canadian border to flee.  Although they ultimately withdrew from this plan, the Magistrate Judge surmised, if they were willing to do that for a friend, to what lengths would they go to abscond themselves–particularly since Jonida's former boyfriend was in Canada and both sisters have traveled to and from Canada with some regularity.  Magistrate Judge Vecchiarelli found the evidence showed that both sisters had unexplained wealth with no legitimate source of income.  She noted that Jonida was involved in a criminal enterprise that inherently involves violence and, although she may not have been furthering the violence, it was clear that she stayed in the conspiracy knowing that violence could ensue.  Also, Jonida, a peace officer, was living with a convicted drug-trafficking felon who had access to her firearms.  The judge found that Jonida's proposed residence on bond, her

-7-

parents' home along with her current boyfriend, would not be acceptable because she would still be living with a felon.  In sum, the Magistrate Judge found that there were no conditions or combinations of conditions that would assure Jonida's appearance at trial or the safety of the community, and denied her request for bond.

### B.    The District Court's Analysis

Jonida has now filed the pending Motion asking the Court to reverse the order of detention.  (Doc #: 19.)  Counsel argues that the nature and circumstances of the allegations against Jonida reflect that she is the least culpable of the four defendants.  According to counsel, the weight of Jonida's alleged MDMA-trafficking is at this juncture weak.  "In fact, there is an extreme lack of evidence that Jonida Alicka was involved in the possession or trafficking in MDMA."  (Motion at 7.)  In contrast, the strongest evidence involves her participation in marijuana-trafficking for which there is a maximum five-year prison sentence and no presumption of detention.  Counsel notes that Jonida has no prior criminal record and has in fact excelled as a college student at both the community college level and at Cleveland State University.

In analyzing the Motion, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant and (4) the nature and seriousness of the danger that would be posed to the community by the defendant's release pending trial.  The Court notes, as a preliminary matter, that these are basically the same arguments Jonida's counsel presented to Magistrate Judge Vecchiarelli at the detention hearing.  The Court agrees with the Magistrate

-8-

Judge's findings and conclusion.  That said, having reviewed the record, the Court will undertake its own analysis.

Jonida is presently charged with conspiracy to possess with the intent to distribute greater than 20 lbs of marijuana and at least 9 kilograms of MDMA–a charge that carries a mandatory minimum prison term of 10 years, is a crime of violence as Congress has recognized and the evidence bears out, and connotes a presumption of detention.  The street value of the 9 kilograms of MDMA charged in the indictment is about $360,000, suggesting that this enterprise was not a small one but an organization capable of moving significant quantities of MDMA into the State of Ohio.  The specter of a ten-year prison sentence for a woman who has not spent one day in jail and is an auxiliary police officer represents a flight risk for someone who apparently has the wherewithal and *practiced* ability to abscond.

Contrary to counsel's position, there is ample circumstantial evidence implicating Jonida in the trafficking of MDMA.  SA Gardner testified that Jonida was personally responsible for transporting at least 2 kilograms of MDMA on one occasion and an unspecified amount of MDMA from New York on another.  A cooperating source has stated that Jonida explained on more than one occasion how she could transport narcotics in her car with complete impunity by simply flashing her badge if stopped by police.  There are over 80 hours of audio and video recordings that SA Gardner states capture both sisters trafficking drugs.  And multiple cooperating sources have discussed with SA Gardner their individual drug-related dealings with Jonida.

The history and characteristics of Jonida Alicka do not weigh in favor of release.  Jonida's work as a peace officer who is on the verge of graduating from Cleveland State

University, with a major in *criminology* no less, completely overshadows the fact that she has no prior criminal record.  This fact alone makes her equally, if not more, culpable than her co-defendants.  The evidence shows that when her co-defendants were arrested, Jonida immediately contacted a customer to sell her marijuana for her.  Jonida made no push back when Turhani called her from a jail phone and said that only one of the co-defendants should take the hit for all of them.  Jonida explained in detail to a cooperating source how she could avoid detection by police when transporting drugs in the trunk of her car.  Her sister explained in detail how Jonida transported drugs from New York to Ohio.  There is an audiovisual recording of Jonida entering her sister's living room in the midst of an MDMA transaction, with Jonida answering questions from the purchasers.  This is not the conduct of a person with any respect for the law or the safety of others.  Indeed, the Court wonders why she has been studying criminology at all.

The Court is required to consider the nature and seriousness of the danger that would be posed to the community by Jonida's release.  Jonida's track record with her drug-trafficking felon boyfriends does not help her.  There is evidence that she and her sister set off for Canada with the aim of helping one boyfriend, F.M., whom Jonida knew was on supervised release in the Northern District of Ohio, to abscond.  Her proposed living arrangement, if given bond, is with her current boyfriend in her parents' home.   But she cannot live with a felon, and she knows she cannot have firearms in a house in which a felon is residing.  Jonida's continued participation in this drug-trafficking conspiracy, while her co-defendants were in jail and at an accelerated pace after their release, evinces an utter lack of regard for the law or safety of others and a willingness to do anything to achieve her own ends.

//

-10-

**IV.**

It is sad to think that Jonida's parents, both factory workers, emigrated from Albania to the United States 16 years ago, presumably to make a better life for Jonida and her sisters. Sadly, under the circumstances of this case, the Court finds that Jonida has not overcome the presumption in favor of detention.   A preponderance of the evidence shows that she poses a flight risk, and clear and convincing evidence shows that she poses a danger to the community. Accordingly, the Motion (**Doc #: 18**) is hereby **DENIED**.

**IT IS SO ORDERED.**

 */s/Dan A. Polster    May 23, 2016*
**Dan Aaron Polster**
**United States District Judge**

-11-